# SUPREME COURT.

## DANIEL GREEN agt. LYMAN BLISS.

The law is too well settled to admit of argument, that the affidavits of jurors are not receivable to impeach their verdict, for mistake or error in respect to the merits of a case; or for their own misconduct, or that of their fellows.

The affidavit of the constable who had charge of a jury which was sent out in the evening, to the effect that he allowed them to separate for the night before they had agreed on a verdict, is entitled to but little weight, as such conduct was in violation of his sworn duty to keep the jury together until they agreed on a verdict.

The judge at the circuit may direct the jury to seal their verdict, without the consent of the parties.

Where a jury was sent out in the evening, which had not agreed when the court was ready to adjourn for the night, and the judge, without the consent of the parties, directed the sheriff to say to the jury, they might seal their verdict, and bring it in, on the coming in of the court the next morning, which the sheriff did as he was directed; and there was no pretence that the sheriff said anything to the jury, except to inform them what the judge told him to say to them, *held* no cause for setting aside the verdict.

The strict rule requires that all of the jury should sign a sealed verdict; but where a sealed verdict was only signed by the foreman, and the counsel for the unsuccessful party was present when the verdict was delivered to the court, and he made no objection on that ground to its reception, *held*, the irregularity, if any, was waived.

Where a jury, that brought in a sealed verdict, was polled at the request of the unsuccessful party, and one of the jury, after the verdict was stated to him, in answer to the inquiry of the clerk if it was his verdict, answered, "I consented to it," and another answered, "I agreed to it," and the attention of the court was not called to the manner the jurors answered, and the counsel for the unsuccessful party, through inadvertence, supposed each juror said it was his verdict, *held* no cause for disturbing the verdict.

If each juror does not say the verdict is his, when the jury is polled, it is the *duty* of counsel for the unsuccessful party to call the attention of the court to the fact, if he fails to do so, even through inadvertence, he loses the right to afterwards allege the verdict was not agreed to by the entire jury, by reason of their not all answering it was their verdict.

Various questions, touching irregularities in the making up and the reception of verdicts, and the polling of juries, and the sealing and bringing in of verdicts, noticed and commented upon.

*Madison Special Term, Feb.,* 1856.

MOTION by plaintiff to set aside the verdict in this action for irregularity.

This action was tried at the Madison circuit in October, 1855. One of the jury, and the constable who had charge of the jury, swear, that the jury retired in the evening to make up their verdict; that after the jury had deliberated a while, they were informed by the sheriff the judge had directed that the jury should seal their verdict, and bring it into court the next morning. The fact that the judge told the sheriff so to inform the jury is uncontradicted. But it does not appear by any affidavit, whether the plaintiff's counsel consented or dissented to the direction of the judge, that the jury should seal their verdict, or whether he knew of such direction being given. Soon after this direction was given, the court adjourned for the night.

The constable and one of the jury substantially agree in their affidavits, that the jury, after consulting an hour or two, could not agree upon a verdict; that one or more of the jury complained of being unwell; and that, for the purpose of separating for the night, between twelve and two o'clock, a verdict for the defendant was drawn up, and signed by the foreman, and sealed as the verdict of the jury, and that thereupon the jury separated; but that such verdict was not, in fact, agreed to by all of the jury, nor was it signed by any of them except the foreman.

The clerk of the court and the juror aforesaid, substantially agree in their affidavits, that when the jury came into court the next morning, the foreman, in answer to the inquiry of the clerk, declared the jury had agreed upon a verdict, and then delivered the same to the clerk in the presence of the plaintiff's counsel. That thereupon the clerk said, "Gentlemen of the jury, listen to your verdict as the court have recorded it. You say you find for the defendant." That the plaintiff's counsel then requested the clerk to poll the jury; and the clerk then called the several jurors by name, and inquired if that was their verdict; that some of the jurors answered, it was; that one answered, "I consented to it," and another answered, "I

agreed to it." The attention of the court was not called to the manner the jurors answered, and the plaintiff's counsel swears he did not notice it by reason of his attention being diverted to some other business; and that he did not know but all the jurors answered it was their verdict, till after they had dispersed.

It does not appear by any affidavit, that any objection was made to the reception of the verdict, on the ground it was sealed, or was not signed by all of the jury, or because the jury had separated during the night, or for any other reason.

Two of the jury have made affidavits, which are presented in opposition to this motion; in which they state, that ten of their number agreed to a verdict for the defendant on their first ballot; that one who was in favor of finding a verdict for the plaintiff, appeared, as they tho ught, to have some prejudice against the defendant or his family; but after several hours' discussion and examination of the evidence, the jury all agreed upon a verdict in favor of the defendant; that the verdict was then reduced to writing, and distinctly read over, and, as they then thought, and yet believe, all of the jury assented thereto. These two jurors also state that the jury then separated, and came into court the next morning; and, on being called, they were asked by the clerk if they had agreed upon their verdict? to which inquiry their foreman responded in the affirmative, and thereupon delivered to the court their sealed verdict, for the defendant, which they had agreed upon the night before; that when the jury was polled, and the question was asked by the clerk, " Is this your verdict?" each and every juror responded in the affirmative, as they then understood, and as they still believed when they made their affidavits.

> DUANE BROWN, *for plaintiff.*
> A. C. STONE, *for defendant.*

BALCOM, Justice. The law is too well settled to admit of argument, that the affidavits of jurors are not receivable to impeach their verdict, for mistake or error in respect to the merits

of a case; or for their own misconduct, or that of their fellows. (*Clum* agt. *Smith*, 5 *Hill*, 560.) Were the law otherwise, the affidavit of a juror, who swears he assented to a verdict *as a ruse*, for the purpose of separating, would not be entitled to much weight, except for the purpose of showing the cause of a party had been tried by a juror who was unfit to be in the panel.

The affidavit of the constable who had charge of the jury, to the effect that the jury did not agree upon the verdict that was signed and sealed by their foreman, before he allowed them to separate, is *felo de se* of his credibility. He violated his sworn duty, to keep the jury together until they agreed on a verdict; or his affidavit is untrue. His affidavit cannot overturn the verdict in this action, when it is contradicted by two jurors whose statements are consistent with their integrity as jurors.

The plaintiff's counsel insists that the verdict should be set aside, because, without his consent, the judge directed the sheriff to instruct the jury to seal their verdict, and bring it into court the next morning.

In most of the reported cases in this state, where sealed verdicts have been rendered, the direction of the judge to the jury to seal their verdict, was given by the consent of the parties. (*See Root* agt. *Sherwood*, 6 *Johns.* 68; *Fox* agt. *Smith*, 3 *Cow.* 23; *Douglass* agt. *Toucey*, 2 *Wend.* 352; *Bunn* agt. *Hoyt*, 3 *Johns. Rep.* 255; *Jackson* agt. *Hawks*, 2 *Wend.* 619.)

Graham, in his Practice, says, " Where the jury are likely to be absent for some time, and the business of the day is through, it is *usual* to direct them when they shall have agreed upon their verdict, to seal it, and bring it into court the next morning. Whether the judge may do this *without the consent of the parties*, has never been expressly decided." (*Gra. Prac.* 2d ed., 316.)

I am of the opinion the judge may direct the jury to seal their verdict without the consent of the parties. It has been customary to do so: a party loses no right thereby. The jury may be polled when they bring in a sealed verdict; and they may dissent therefrom. If it is informal they may be sent out

again to correct it, but they cannot change it after they have sealed it. (8 *Ohio Rep.* 405.) And the jury may be sent out again, where there is any dissent from their verdict as sealed.

It has been decided in Ohio, in both civil and criminal causes, that the court may, in its discretion, direct the jury to seal their verdict, without the consent of the parties. (*Sutliff* agt. *Gilbert,* 8 *Ohio Rep.* 405; *Sargent* agt. *The State,* 11 *Ohio Rep.* 472; *The State* agt. *Engle,* 13 *id.* 490.) The old rigid rules, in regard to keeping juries " without meat or drink, fire or candle," and that authorized the judge to have them carried from circuit to circuit, until they were all agreed, have been greatly relaxed.

Judge HITCHCOCK, in *Sutliff* agt. *Gilbert,* says, the most common practice of the courts of Ohio was to direct the jury, if the court should not be in session, when they have agreed, to put their verdict under seal, and bring it in at the opening of the court. He further says, " In thus far relaxing ancient rules, we have experienced no inconvenience, and I have no doubt we might go further without any danger; for I believe the more confidence is placed in jurors, the more they are treated like reasonable men, the more will right and justice, through their instrumentality, be done."

In this case it is further insisted, that the judge could not direct the sheriff to convey his instruction to the jury; but that he should have had the jury come back into court, and should there have given them the direction in person to seal their verdict.

The strict rule laid down in *Sargent* agt. *Roberts,* (1 *Pick. Rep.* 337,) perhaps, required the judge to call the jury back into the court-room, and there personally direct them to seal their verdict. That case differed from this. The judge, in that case, had adjourned the court, and he then wrote a letter to the jury respecting the cause that had been committed to them; and for that cause the verdict was set aside, although there was nothing exceptionable in the letter itself.

There is no pretence in this case that the sheriff said anything more to the jury than that the judge had directed that they might seal their verdict when they agreed on one. If

Green agt. Bliss.

this was technically irregular, it is not a sufficient cause for disturbing the verdict. It is not every trifling irregularity that will warrant the court in setting aside verdicts. (2 *Cow.* 589; 1 *Hill,* 207.)

It is also claimed that each juror should have signed the verdict before they separated. This they should have done; but it was merely a technical irregularity, which was cured, as well as the supposed one committed by the judge in giving the direction to the jury, to seal their verdict, through the sheriff, by the plaintiff's counsel not objecting to the reception of the verdict, when it was delivered in his presence, at the opening of the court the morning after it was agreed upon by the jury. (*Douglass* agt. *Toucey,* 2 *Wend.* 352; *Bunn* agt. *Hoyt,* 3 *Johns.* 255; *Gra. Pr.,* 2d ed., 316.)

It is also argued, that two of the jurors did not agree to the verdict delivered by their foreman, because, when they were polled, one only said, " I consented to it," and the other, " I agreed to it." This allegation is contradicted by two of the jury, which is enough to balance the recollection of the clerk, whose duty it was to ascertain and declare, if all of the jury agreed to the verdict as rendered. (4 *Com.* 549 *and* 550.) If the two jurors made answer in the precise language the clerk swears they did, it raises a strong presumption that they then assented to the verdict as the clerk had recorded it. Had they then desired to dissent therefrom they would probably have so stated; at least it is reasonable to infer they would have done so If they did not then agree to the verdict as delivered to the court by their foreman, such fact should have been ascertained on the spot; and the jury should have been sent out again, to further deliberate. The non-attention of the plaintiff's counsel, who was present, to what was being done, is no excuse for his not then ascertaining whether the verdict, as recorded by the clerk, was agreed to by all of the jury. His inattention was the plaintiff's misfortune, if the plaintiff sustained any injury thereby.

The fact that the verdict was delivered, and that the jury was polled at the request, and in the presence of the counsel

for the unsuccessful party, and that the verdict was entered without his objection, and without any intimation from the clerk that the jury did not all agree to it, is such strong and controlling evidence of it being the verdict of each of the twelve jurors, that nothing short of proof. that an actual fraud was practiced on the court and the counsel for the unsuccessful party, by the opposing party, or some one in his interest, or by the clerk, in procuring the verdict to be delivered and entered when it was not agreed to by the entire jury, should be allowed to disturb it.

To allow verdicts to be set aside upon the mere recollection of the clerk, inconsistent with his duties, or upon that of other persons, which show him at least guilty of negligence in his official trust, that some of the jurors, when asked if the verdict delivered by their foreman was their verdict, answered, " I consented to it," or, " I agreed to it," would open a door for abuses more intolerable than for parties to submit to verdicts that are only agreed to by a majority of the jury.   Such a practice would tend to substitute the uncertain memories of individuals for the unchanging records of the courts.   It had better be discountenanced.

The motion to set aside the verdict in this action is denied, with $10 costs.